RECEIVED
IN ALEXANDRIA, LA.
MAY 2 4 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

EDWARD ALLEN WRIGHT,　　　　　　　CIVIL ACTION
　　　　　Appellant　　　　　　　　　　NO. 09-cv-0917

VERSUS

MICHAEL J. ASTRUE, COMMISSIONER　　JUDGE DEE D. DRELL
OF SOCIAL SECURITY,　　　　　　　　MAGISTRATE JUDGE JAMES D. KIRK
　　　　　Appellee

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

　　　　Edward Allen Wright ("Wright") filed an application for
disability insurance benefits ("DIB") on July 27, 2006 (protective
filing date July 10, 2006), alleging a disability onset date of
July 19, 2004 (Tr. p. 78) due to heart problems, high blood
pressure, and a pinched nerve in his back (Tr. p. 99). That
application was denied by the Social Security Administration
("SSA") (Tr. p. 58).

　　　　A de novo hearing was held before an administrative law judge
("ALJ") on January 30, 2008, at which Wright appeared with his
attorney (Tr. p. 21). The ALJ found that, although Wright suffers
from a severe combination of hypertension, GERD, and coronary
artery disease which required coronary artery bypass grafting (Tr.
p. 14), he has the residual functional capacity to perform the full
range of light work (Tr. p. 17) and a finding of "not disabled" was
directed by the Medical-Vocational Guidelines, Rule 202.21, of

Table 2 in 20 C.F.R. Part 404, Subpart P, Appendix 2, through the he Wright was last insured on June 30, 2007 (Tr. p. 20).

Wright requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1) and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Wright next filed this appeal for judicial review of the Commissioner's final decision.  Wright raises the following issues for judicial review:

> 1. The Appeals Council failed to properly consider the new and material evidence forwarded to it prior to its denial.

> 2. The ALJ erred in assessing Wright's residual functional capacity, as he failed to include significant exertional and nonexertional limitations resulting from all of Wright's medically determined impairments.  As a result, the ALJ's reliance on Rule 202.21 of the Medical-Vocational Guidelines, to find Wright not disabled at Step 5, was erroneous.

## Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act.  42 U.S.C. 416(i), 423.  Establishment of a disability is contingent upon two findings.  First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. 423 (d)(1)(A).  Second, the impairments must render the plaintiff unable to engage in the work

2

previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. 423(d)(2).

### Summary of Pertinent Facts

#### 1. Medical Records

In July 2004, Wright (then 46 years old) was diagnosed with coronary artery disease and unstable angina, and underwent a quadruple coronary artery bypass grafting (Tr. pp. 160-161, 164-165, 182, 183). In August 2004 and August 2005, radiologic evidence showed Wright's prior coronary artery bypass graft, but no evidence of acute cardiopulmonary process (Tr. pp. 169-170).

In August 2005, Wright went to the emergency room complaining of abdominal pain in the right lower quadrant, off and on for two years (Tr. p. 154). Wright reported having previously been told that he had blood in his urine, which was treated with Keflex (Tr. pp. 154-155). Wright was found to have a trace of blood in his urine and abdominal pain due to hypertension, and Wright was prescribed Levsin (Tr. p. 155). A CT scan of Wright's abdomen in showed only calcification of aortoiliac vessels (Tr. pp. 167-168). In October 2005, Wright was again admitted to the emergency room and diagnosed with gastroesophageal reflux disease ("GERD") (Tr. pp. 151-152). Wright also continued his checkups in the cardiac clinic and received his prescriptions for Lipitor, Metoprolol, and ASA (Tr. pp. 148-152).

In May 2006, Wright was examined for complaints of low back pain, hypertension, edema and high cholesterol; his blood pressure was 138/87, and he was six feet tall and weighed 231 pounds (Tr.

3

pp. 144-145).   X-rays of Wrights shoulder were negative, his liver functions were normal, he resumed his GERD medication, and he was advised to take medication to control his cholesterol (Tr. pp. 147-148).   Wright was prescribed Nexium, Crestor, and Metoprolol Tartrate (Tr. p. 148).

In October 2006, Wright was evaluated by Dr. Scott Bergeaux, a family medicine doctor, at the request of the Social Security Administration (Tr. pp. 209-212).  Wright complained of indigestion low back pain, and intermittent neck pain since 1998 which runs down his left arm and is associated with hand numbness, his blood pressure was 180/110, he weighed 243 pounds (at six feet tall), and cervical and lumbosacral x-rays showed mild degenerative changes with well-maintained disc spaces and normal alignment (Tr. pp. 210-211).  Dr. Bergeaux diagnosed hypertension, GERD, and a history of CABG (Tr. p. 211).  Dr. Bergeaux found Wright's gait was normal, he rose, stood and ambulated normally, he could bend and squat without difficulty, and he had a normal grip strength with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally (Tr. pp. 211-212).  Dr. Bergeaux found Wright should be able to sit, walk, and/or stand for a full workday, he can lift/carry objects of at least 20 pounds, and he has no postural, manipulative, visual or communicative limitations (Tr. p. 211).

In March 2007, Wright went to the LSU Health Sciences Center Occupational Therapy Clinic for evaluation of complaints of right hand numbness, tingling for three to four months, and wrist pain on extension (Tr. p. 215).   Wright had edema in his right hand, and

4

his grip strength in both hands was below average (Tr. pp. 215-216). Wright was diagnosed with carpal tunnel syndrome and given splints to wear at night and exercises to do (Tr. pp. 216-217, 223). Wright also went to the rehabilitation services department for complaints of right knee pain, which was found to be caused by trunk weakness and shifting; Wright was given a cane to improve his gait pattern and exercises to strengthen his trunk (Tr. p. 220).

In April 2007, Wright was seen in the LSU Health Center Rehabilitation Clinic for complaints of right knee and low back pain, where he reported that exercising every other day for one month had not really helped; Wright was told to continue exercising (Tr. p. 267). In June 2007, Wright's medical exam showed improved muscle cramps, musculoskeletal myalgias, hypercholesterolemia, and benign hypertension that was improved but needed better control (Tr. pp. 254-256).

In July 2007, an ultrasound showed "findings consistent with bilateral carpal tunnel syndrome" (Tr. pp. 252-253). Wright was seen in the LSU Health Center Vascular Surgery Clinic for complaints of burning, stinging pain in his left leg; analog doppler waveforms on both legs showed no evidence of lower extremity arterial insufficiency (Tr. pp. 248-251).

Wright was examined in the LSU Health Center Family Medicine Clinic in October 2007 for complaints of hypertension and leg and arm cramps (Tr. p. 233). Wright was diagnosed with muscle cramps, musculoskeletal pain, hypercholesterolemia, and hypertension and was prescribed Paxil, Prinvil, and Lopid (Tr. p. 237).

5

## 2. January 30, 2008 Administrative Hearing

At his January 2008 administrative hearing, Wright testified that he was fifty (50) years old, six feet tall, weighed 240 pounds, was right-handed, and lived with his ex-wife and son (Tr. pp. 23-24). Wright testified that his son owned the house he lived in, he did not have any income but his son had income, and he and his ex-wife received food stamps (Tr. p. 24).

Wright testified that he has a high school education and past relevant work experience as a carpenter (Tr. p. 25), which involved lifting more than 50 pounds (Tr. p. 29). Wright testified he last worked in 2003 doing carpentry odd jobs (Tr. p. 25). Between 1993 and 1998, Wright worked in a plywood plant until the plant closed (Tr. p. 26). Wright testified he had open heart surgery in June 2004, he hurt his back while working in the plywood plant, and he suffered a pinched nerve in his neck from a driving-related incident at the time he worked in the plywood plant (Tr. pp. 27-28, 42-43). Wright testified the neck injury was treated with a muscle relaxer and pain medication (Tr. p. 29). Wright also testified he is starting to have problems with the nerves in his hands causing "shaking inside" (Tr. p. 29).

Wright testified that, during the day he sits and watches TV, sits on the porch, and walks around a little bit (Tr. p. 30). Wright testified he does not walk very much because he gets short of breath (Tr. p. 30). Wright testified that he does not mow the yard, sometimes his ex-wife has to help him bathe and dress, he does not take care of his grandchildren, he grocery shops with his

6

ex-wife, he does not cook but he can make a sandwich, and he does not do housework (Tr. pp. 30-32). Wright testified that he has trouble holding anything very long, but he can pick up a gallon of milk and put it on the kitchen counter (Tr. p. 33). Wright testified that he used to fish, and is still able to go fishing with his son because his son carries everything (Tr. p. 33). Wright testified that he goes to church occasionally and sometimes family visits him (Tr. pp. 33-34). Wright testified that he likes to watch sports, hunting and fishing shows on TV (Tr. p. 34). Wright testified that he used to hunt deer, ducks, and squirrel, and still hunts deer (Tr. p. 34).

Wright testified that he does not sleep well because, when he lies on his left side it hurts, when he lies on his back it hurts, and when he lies on his right side his left side hurts (Tr. p. 31).

Wright testified that he has pain in his lower back and neck which worsens on standing or sitting very long (Tr. p. 35). Moving and flexing sometimes ease the pain (Tr. pp. 35-36).

Wright testified that his blood pressure is still high, so his medication needs to be adjusted (Tr. p. 37). Wright testified that his only medication side effect is dizziness if he bends over (Tr. p. 37).

Wright testified that he cannot work due to muscle cramps in his hands which make it difficult for him to hold things, and shortness of breath which prevents him from lifting or pulling (Tr. pp. 37-38). Wright testified that he tried to work with a hammer, but the hammer flew out of his hand, and he cannot hold onto long

boards for any period of time because his arms go to sleep or he gets a cramp in his arms or hands (Tr. pp. 45-46).

Wright testified that he attended vo-tech (welding classes) in high school, he can read most things but not long words, he can copy but he cannot spell, and he cannot write a grocery list or a telephone message (Tr. p. 39). Wright was in regular education until high school, when he went into the vocational welding curriculum (Tr. pp. 38-39).

Wright testified that he has pain in his neck that goes down to his hands, then both hands go to sleep, the left worse than the right (Tr. pp. 39-40). Wright's doctors diagnosed carpal tunnel syndrome in his wrists (Tr. p. 40), but did not prescribe surgery (Tr. p. 48). Wright also testified that, since his heart surgery, when they took three veins out of his left leg, his feet go to sleep, his left ankle burns and stings, and his left leg swells, goes to sleep, and feels heavy if he walks very far (Tr. pp. 40-41). Wright testified the pain in his legs eases if he gets off of them or if he takes pain medicine, but the pain medicine makes him nauseated (Tr. p. 43). Wright testified that he uses a cane that was prescribed for him in March 2007 (Tr. p. 51).

<u>ALJ's Findings</u>

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Wright (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent

to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work.  If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends.  A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis.  Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled.  Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis.  Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Wright has not engaged in substantial gainful activity since July 19, 2004 (Tr. p. 14), that his disability insured status expired on June 30, 2007 (Tr. p. 14), and that he has severe impairments of hypertension, GERD and coronary artery disease which required coronary artery by-pass grafting (Tr. p. 14), but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 16).  The ALJ also found that Wright is unable to perform his past relevant work as a carpenter and a

9

lead man in a plywood plant (Tr. p. 19).

At Step No. 5 of the sequential process, the ALJ further found that Wright has the residual functional capacity to perform the full range of light work (Tr. pp. 19-20).  The ALJ found Wright is a younger individual with a high school education and that transferability of work skills is immaterial (Tr. pp. 20-21).  The ALJ concluded that a finding of "not disabled" was directed by the Medical-Vocational Guidelines, Rule 20.21 of Table 2, 20 C.F.R. Part 404, Subpart P, Appendix 2, of the Social Security Act through the date Wright was last insured, on June 30, 2007 (Tr. pp. 19-20).

<u>Scope of Review</u>

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.  <u>McQueen v. Apfel</u>, 168 F.3d 152, 157 (5th Cir. 1999).  For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance.  <u>Falco v. Shalala</u>, 27 F.3d 160, 162 (5th Cir. 1994), citing <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 482 (1971).  Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole.  The substantiality of the evidence must take into account whatever in the record fairly

10

detracts from its weight. <u>Singletary v. Bowen</u>, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. <u>Allen v. Schweiker</u>, 642 F.2d 799, 801 (5th Cir. 1981). Also, <u>Anthony v. Sullivan</u>, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. <u>Dellolio</u>, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." <u>Johnson v. Bowen</u>, 864 F.2d 340 (5th Cir. 1988); <u>Dellolio</u>, 705 F.2d at 125.

<u>Law and Analysis</u>

<u>Issue No. 1 - New Evidence Presented to the Appeals Council</u>

First, Wright contends the Appeals Council failed to properly consider the new and material evidence sent to it prior to its denial. That evidence consisted of two 2008 MRIs and a March 19, 2009 MRI report (Tr. pp. 140-141) which stated that the December 2008 MRI of Wright's back showed a herniated disc between vertebrae L5 and S1 which was extruded, nerve root involvement on the left, and disc disease. The report further states the findings from the

11

MRI are consistent with Wright's left leg pain and tingling (Tr. p. 140). There is also an MRI dated November 2008 of the lumbar spine which showed decreased space height, hypertrophy of the facets, and narrowing of the lateral recesses, especially at L4-L5 and L5-S1 (Tr. p. 142).

The Appeals Council stated that it considered the additional evidence but did not find that it provided a basis for changing the ALJ's decision (Tr. pp. 1-2).

The ALJ found there was no evidence to support Wright's claim of disability due to leg pain (Tr. p. 16):

> "On March 14, 2007 the claimant also complained of pain in his right knee. Physical examination revealed the cause of the problem was weakness in the left leg. The claimant was prescribed a cane.

> "No definitive diagnosis for the cause of this weakness was made. Doppler testing ruled out a circulatory problem as the claimant had normal ankle/brachial systolic blood pressure ratios. The medical records contain diagnoses of muscle cramps and musculoskeletal pain. But of greater interest are the objective findings on subsequent examinations. When seen on June 27, 2007 gait and station were reported as normal. On October 30, 2007 gait and station were again reported as normal. In addition the physician reported finding range of motion and strength in the legs were normal.

> "The objective medical evidence does not establish a functional loss in the left leg that persisted for 12 continuous months or more. Rather, whatever the cause, the muscle weakness appears to have resolved by October 30, 2007."

The 2008 MRIs, showing an extruded herniated disc at L5-S1 with nerve root involvement, constitute objective evidence supporting Wright's claim of pain in his left leg even in June 2007, when he was last insured. The evidence of Wright's injuries prior to 1998 and his medical complaints prior to June 30, 2007

12

show the herniation occurred before June 30, 2007. The fact that Wright had left leg pain, tingling, and edema appears to indicate the nerve root involvement occurred before June 30, 2007, also; however, the MRI's could also be evidence of deterioration of Wright's condition subsequent to the expiration of his disability insured status. In any event, contrary to the ALJ's statement, the MRIs show the condition of Wright's left leg was not resolved by October 30, 2007.

However, as the ALJ correctly pointed out, Wright did not carry his burden of proving a functional loss in his left leg due to pain as of June 30, 2007. The medical evidence in June and October 2007 showed no functional loss in his left leg. Therefore, Wright's residual functional capacity was not affected in June 2007 by the herniated disc and associated pain or tingling in his left leg.

Although a claimant's assertion of pain or other symptoms must be considered by the ALJ, 42 U.S.C. § 423(d)(5)(A) requires that a claimant produce objective medical evidence of a condition that reasonably could be expected to produce the level of pain alleged. Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989), citing Owens v. Heckler, 770 F.2d 1276, 1281 (5th Cir. 1985). The mere existence of pain is not an automatic ground for obtaining disability benefits. The factual determination of whether the claimant is able to work despite some pain is within the discretion of the Administrative Law Judge and will be upheld if supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th

13

Cir. 1980).

A claimant's symptoms, including pain, will be determined to diminish a claimant's capacity for basic work activities to the extent that the claimant's alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence.   20 C.F.R. §404.1529(c)(4).   Subjective complaints of pain must be corroborated by objective medical evidence.   Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2000).  Although severe pain can constitute a nonexertional impairment, pain is a disabling condition only when it is constant, unremitting and wholly unresponsive to therapeutic treatment.  Chambliss, 269 F.3d at 522.

The ALJ's decision on the severity of pain is entitled to considerable judicial deference.  James v. Bowen, 793 F.2d 702, 706 (5th Cir. 1986); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). Such a credibility determination is within the province of the ALJ. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 128-29 (5th Cir. 1991).

Wright has not shown that his left leg pain was constant and unremitting in June 2007.  Since the ALJ in this case has made the mandatory indication of the basis for her credibility choices concerning claimant's complaints of leg pain, and since her choices are not unreasonable, her finding that Wright's left leg pain would not prevent Wright from performing work is proper.  Carry v. Heckler, 750 F.2d 479, 485-86 (5th Cir. 1985).  Substantial evidence supports the Commissioner's conclusion that Wright was not

disabled by leg pain at any time through June 30, 2007.

<u>Issue No. 2 - Residual Functional Capacity</u>

Next, Wright contends the ALJ erred in assessing Wright's residual functional capacity, since she failed to include significant exertional and non-exertional limitations resulting from all of Wright's medically determined impairments. Wright contends the ALJ's reliance on Rule 202.21 of the Medical-Vocational Guidelines, to find Wright not disabled at Step 5, was erroneous.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. <u>Herron v. Bowen</u>, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, <u>Babineaux v. Heckler</u>, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. <u>Leggett v. Chater</u>, 67 F.3d 558, 565 (5th Cir. 1995).

When the ALJ found that Wright could not return to his past relevant work, the burden shifted to the Commissioner to show that

Wright can perform other work in the national economy.  Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).  The law provides that the Commissioner can meet that burden if he can prove that Wright's residual functional capacity, age, education and previous work experience match those set out in any "Rule" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids") that directs a conclusion that the claimant is not disabled.  Sec. 200.00(a) of Appendix 2 states this as follows:

> "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."

The U.S. Supreme Court has upheld the use of these Guidelines by the Commissioner in lieu of calling a vocational expert to testify.  Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).  Also, Harrell v. Bowen, 862 F.2d 471, 478 (5th Cir. 1988).

For cases at the administrative law judge hearing level, the ALJ has the responsibility for deciding a claimant's residual functional capacity.  20 C.F.R. § 404.1546, § 416.946.  When making the residual functional capacity determination an ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others.  20 C.F.R. § 404.1545(a).  Moreover, the ALJ must specify the evidentiary basis for his RFC determination.  SSR 96-8p.  Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

The Fifth Circuit has consistently held that, once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the national economy that the claimant can perform.[1]  Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986), and cases cited therein.

Wright contends the ALJ erred in failing to consider his bilateral carpal tunnel syndrome when assessing his residual functional capacity.  Wright argues his ability to hold things is affected by his carpal tunnel syndrome.  Although carpal tunnel syndrome was diagnosed in March 2007, surgery was not recommended for Wright.  Instead, Wright was given splints to wear at night and exercises to do at home.  A follow-up visit in May 2007 showed Wright's grip and pinch strength were almost within normal limits, and he was diagnosed with "residual deficits and symptoms from carpal tunnel syndrome" and referred to the orthopedic clinic (Tr. pp. 263-266).  A July 2007 ultrasound of Wright's left arm showed "findings consistent with bilateral carpal tunnel syndrome," but a subsequent diagnosis was not made, and there are no medical records of further treatment for carpal tunnel syndrome in the

---

[1] The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.  Fields, 805 F.2d at 1170.

administrative record (Tr. p. 252).  It does not appear that Wright sought further medical care for his carpal tunnel syndrome and, at his hearing, Wright confirmed no further treatment has been prescribed (Tr. pp. 48-49).  The ALJ concluded that Wright's carpal tunnel syndrome had not lasted twelve continuous months as of June 30, 2007 (Tr. p. 16).  See 42 U.S.C. 423 (d)(1)(A) ("Establishment of a disability is contingent upon two findings.  First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.").  Therefore, the ALJ correctly found Wright's carpal tunnel syndrome did not meet the first requirement for establishing a disability.

Wright also contends his inability to hold and carry things due to his carpal tunnel syndrome make him unable to perform the full range of light work.  However, the ALJ noted that Dr. Bergeaux found Wright had no restrictions on his ability to sit, stand or walk due to his status post coronary artery by-pass grafting, hypertension, and GERD, but limited Wright to lifting and carrying no more than twenty pounds (Tr. p. 17).  The ALJ further noted the LSU Medical Center physicians never imposed any restrictions on Wright's basic work activities (Tr. pp. 17-18).

The ALJ concluded there was no period of twelve continuous months or more between the alleged onset of disability in July 2004 and the date Wright was last insured in June 2007 when the claimant could not perform the full range of light work (Tr. p. 19).

Therefore, Wright did not carry his burden of proving his carpal tunnel syndrome lasted at least twelve continuous months and affected his ability to do light work for at least twelve months.

Wright also argues that his herniated disc with nerve root compression affects his ability to perform the full range of light work due to back and leg pain. As noted above, Wright did not carry his burden of proving a functional loss in his left leg as of June 30, 2007, due to his herniated disc. Moreover, the records show Wright seldom complained of back pain, focusing instead on his left leg; in April 2007 he was told to continue exercising for his back and leg pain (Tr. p. 267). Wright has not shown that left leg pain (or back pain) affected his residual functional capacity through June 30, 2007.

Since, Wright has not shown that he had carpal tunnel syndrome for at least twelve continuous months or that he had a functional loss in his left leg prior to June 30, 2007, the ALJ did not err in concluding Wright could perform the full range of light work on June 30, 2007.

This issue is also meritless.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Wright's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written

19

objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the district judge before he makes a final ruling.

A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 24th day of May 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

20